We're on to the first case of the afternoon call, 2-11-09-51, People v. Alain Glazio-Montejo. On behalf of the F1, Ms. Kathleen Hamel, on behalf of the state, Mr. Jay Paul Bonner. Good afternoon, Your Honor. Good afternoon. And before you start, I just want to confirm something. I have no doubt that what Mr. Mangan said is true, but on that Mark B case, I think both of you are involved in that. We can go ahead because the Supreme Court is taking her out. Yeah, yeah. Very good. Thank you. And we would just be tied up with a PLA anyway. I know. It makes a difference. Okay, thank you. And I thank you once again for moving this to today. I really appreciate that. Mr. Montejo stands convicted of two counts of predatory criminal sexual assault of a child. They are based on two penetrations, one a penis in anus and the other finger in anus, that allegedly occurred during a single incident while the child, TM, was visiting his uncle, who is the defendant. We raised two issues on this appeal. One concerns whether or not jury instruction should have been given, and the other that defense counsel's handling of other crimes evidence. I'll start with the jury instruction argument. After TM returned home from his visit at the defendant's a few days after he told his parents that the defendant had done something to him involving private parts, this triggered an investigation. As it turned out, the investigation resulted in evidence that was pretty much limited to TM's story. He testified at the defendant's trial, and the state also presented statements that he had made, the complaints he had made to his parents through him calling the parents to testify, and also a complaint or an interview that he had had with Mark Pleasant, a child abuse investigator. And the interview was videotaped, so the state also used portions of that tape, but not the entire tape in its case in chief. Other than that, and we don't contest the admission of any of that evidence, other than that, the evidence was, there was nothing else to corroborate his claims. There was no person besides TM who said that he or she saw the sexual encounter happen. There was no physical or medical evidence that corroborated the idea that he may have been penetrated, and the defendant didn't confess. So what was the actual evidence that you're relying on to establish the lesser-included offense? It is, it is, well, we're relying on the fact that he did, the child did make complaints that something sexual had happened. He, there was evidence that something sexual might have happened because he did exhibit discomfort after his return, not physical discomfort but emotional discomfort after his return to his parents' house. So it would be conceivable that a jury could think something happened here, something sexual happened here. But the only testimony was that there was the penetration that occurred. He said at first he used his penis and then he used his finger. He never said, and there was one other situation of fumbling, but that case had been dismissed. So what is the evidence you're relying on to establish, you know, there has to be some evidence that would establish the lesser-included offense. So what was it? Well, what we're relying on would be his testimony taken, viewed in the light of the fact that the child was actually proved by the state to have embellished his story. He embellished it to the extent that he told Mark Pleasant that he had been tied up when all this stuff happened. And this is on the videotape that was viewed by the jury. And then a few days before the trial, he told the state's attorney that actually that hadn't happened. Now, what this did is I'm not, and he had not had a plausible explanation for why he made that embellishment. Nevertheless, it created a situation where the jurors were confronted with a video of this child telling that story. And looking exactly the same as when he told the other aspects of his story. And so jurors watching this could feel like, well, his specifics are problematic, but it does appear that something sexual happened. And this would be very similar to the situation in Colton and also in Kennebury. In particular in Colton, though, where although the complainant said that she had been penetrated, the trial judge found that there just wasn't enough, he wasn't satisfied with the evidence of penetration, but still felt something sexual had happened, that sexual conduct had occurred. And so we're just asking for the same thing, basically, for the defendant to have the opportunity to have the same finding made. On cross-examination, did TM even suggest that maybe he was mistaken, that it was just sexual conduct as opposed to penetration? Was there any wiggle room in his testimony? No. I don't think I could say there was. During the instruction conference, what was, I'm going to move on, I'd like to ask you to move on now with your permission, Sue, to the other crimes evidence. What was the limiting instruction that was given? Regarding the other crimes evidence? Actually, there was not the, when, well, there was the... Actually, I guess my question is twofold. What was the limiting instruction and how was it argued? Because it's not in your brief. How was the evidence argued by the state and by the defense? Okay. And what was the limiting instruction? Well, the limiting, okay, we're talking about the evidence that, we have a lot of other crimes here. Combining both the subsequent event with TM as well as the tape, what was the limiting instruction that was given? The 95 event you had, correct? And you had the subsequent event with TM and then that piece of the tape. Yes, right. There was no limiting instruction given regarding the second incident with TM. And certainly not with the stuff that defense counsel brought in. What about the 1995 incident? That, they also failed to give a limiting instruction. However, it was argued, because it was propensity, because it was properly used for propensity, and it wasn't argued as any kind, the state argued only, used it that way in its closing argument. We didn't, I didn't... So if there had been an instruction, it wouldn't have helped. Right, that's right. Sometimes the absence of an instruction actually benefits the defendant in that situation. Yeah, well, in this situation, of course, the propensity is really the only thing that a jury is ever going to do with other crimes' evidence. But the biggest problem with the other crimes' evidence here was... Can I just take one brief moment before you go there? Okay. I think Justice Fentz had a question about our previous issue. Thank you, yeah. Actually, I did, because I just wanted to clarify one thing, and that was the case law seems to talk about, with regard to the conflicting evidence, right? Conflicting testimony, which would then justify a lesser included, correct? Now, from your answer to Justice Burkett's question, is it clear that there was really no conflicting testimony? Well, the testimony, it was conflicting evidence rather than testimony. The child himself on the stand simply alleged that he had been penetrated. That is true. However, the jurors had to view this in the light of the fact that he also was shown not to be a very credible witness, and that there was no... I mean, actually, the medical evidence that was presented was conflicting, because it showed no evidence of penetration. Do you know how often or what percentage of child sexual assault cases actually show medical evidence? It's true that... It's a small percentage. It is a small percentage. That is true. The absence of it doesn't necessarily mean conflicting, though, right? No, it doesn't necessarily, but I acknowledge what I'm really saying here is that because here we have the affirmative demonstration that the child had a tendency... had embellished his story in one regard, that the jury could have found that they might have found they were uncomfortable with accepting his allegations regarding anything specific. And there's also the fact that his story is kind of odd. He has these acts occurring inside of a hospital bed, which the two nephews testified rattled around a lot, and that would be consistent with common experience of a hospital bed of the sort that it is. It's a metal one. And he claims that his little brother is also in the bed when this happens. It's a very odd story. And so the jury, again, may have thought, well, something happened, something sexual happened, but some conduct, but not that. Now, when I interrupted you, you were saying the biggest problem with the other crimes evidence. Well, we think the most serious and harmful error was what happened when the defense counsel deliberately exposed the jury to these totally unfounded allegations that T.N. makes on this video, that the defendant was known to have committed several other sex offenses. So the jury already knew about the fact that there were other sex offenses, correct? They knew that there was one other sex offense, which happened in 1995. But to more than one child. Didn't they know that there were at least two children involved in it? Well, there were two children in this bathtub, and he ended up with only one child, being charged with only one child. So that it was remote in time. You know, a juror could view one incident as that might be the reason that they charged him again, you know, if they had a mind that worked that way. However, when you add to that, allegations that he committed five more sex offenses. And then the allegations are being presented by defense counsel, and they're being presented based on what appears to be an egregious mistake. Because counsel, when he was about to show this tape, or when he's trying to persuade the court to allow him to show the tape, he was arguing that this isn't going to expose the jury to anything they haven't already heard, meaning the 1995 conviction or incident. And instead, I don't know how this could have happened, because it appears that defense counsel, the court, and the state actually viewed the portion of the tape before it was allowed in. But nevertheless, nobody seemed to notice that T.N. didn't say a word about the 1995 crime, which involved a six-year-old. And instead, he refers to having seen that his uncle had raped three seven-year-olds, a 29-year-old and a 38-year-old. And the jury, I'm sure they were puzzled by the fact that defense counsel was presenting this to them. But they must have also thought that it had to be true, because... What was defense counsel's argument? Do you recall? What was his argument regarding that? Yeah. What did he say? Again, it's not in your statement of facts. But what did he argue to the jury regarding that tape? I explained it in detail in the reply brief. What he argued was that the 19 night that he thought the child was saying, you know, had said, I saw that he had done this, you know, to a six-year-old. And then he intended to say, well, see? He went on the Internet, he read about that incident, and then he concocted a claim that was like it. And for some reason wanted to accuse his uncle of a sex offense, that he gave him the idea. However, not only is that not what the tape said, but it also, the state, the defense counsel was not able to establish that TM viewed the tape before he made his complaint. And the state called his father to testify, and he said, we didn't find out about that website until after we went and took TM to the hospital following what he made his complaint. And somebody at the hospital told them that, you know, mentioned to them, you know, your brother is a registered sex offender. And they went on the Internet and found this sexoffender.com site, which, again, was all these offenses that are not apparently defendants. Because if they were, one would think the state would have tendered them in discovery, tried to bring them in as 115-7.3 evidence that they would have at least appeared in the pre-sentence report. And they didn't. Did the defense present any evidence? Yeah. Yes, they did. They presented this tape and also the testimony of two of the defense nephews that were also staying at the apartment at the time that this stuff, this occurred. And I believe some relatives, just to say that they had never seen anything untoward. And then in closing argument, what did the defense attorney actually say about this? I mean, how did he use this tape? Because he said, somebody in my shoes, I think when he was trying to convince Judge Phillips to put it in, somebody in my shoes looking at what I'm up against would do this. Well, what did he say to the jury? It seemed in the argument that he never really recognized that he hadn't established what he would need to establish in order for this to be useful to the defense. And he nevertheless went ahead and argued, you know, this kid knows about sex. He's found out about sex acts on television and on the Internet. And so, you know, this is just a figment of his imagination was basically the tap that was taken. You also mentioned another issue that relates to effectiveness of counsel or ineffectiveness. And that is the state was questioning about other crimes at some point. And the defense counsel did not object to that. And when asked or when allowed to comment, he said, well, I don't have a right to object to that. And that was the evidence of the six-year-old, correct? No, that was he said that in regards to the second incident, the evidence of the second incident, the incident that were the aggravated criminal sexual abuse charges have been based on. Did he ever explain why he didn't have the right to object to that? No, he didn't really explain it. He just he just said that. The I believe that that shows that it was another mistaken notion. I we acknowledge that he objected to it. It's not like it was inherently inadmissible that that sort of testimony could come in under 115 7.3, particularly because it involved the same course of time. The next day. Yeah. You know, we've seen the support that we would have had a hard argument. But we would have at least had the court exercise discretion. The court at least had an opportunity to exercise its discretion. And I included that in this brief, not because I thought that standing alone was reversible error, but because we had two instances here of mishandling of other crimes. And the second one certainly was the more egregious. But that was that was problematic as well. You'll have an opportunity for rebuttal. And thank you. Thank you. Good morning, Your Honor's counsel and police court. I am Jay Huffman of the appellate prosecutor's office. My pleasure to be before you before this court again in this case. First of all, going to the first issue. Questions brought up by Justice Burkett and Justice Hutchinson talking about the other evidence and then whether the child ever backed off from the statements with regard to whether it could be only abuse as opposed to assault. The only thing that it all suggests that it could be abuse instead of assault is the mother's statement that when the child first came home and was acting lackadaisical and didn't want to play with his brothers and didn't seem sick and stuff like that. He said, uncle tried to do private parts with me and immediately talked to his mother and from there on to his father and there on in always said that there was penetration, both with the finger and with the penis. He said he tried to get the penis in. It went in some and he couldn't get it in, but it definitely went in. And of course, examination. He repeatedly said, yes, I know that I lied about being tied up, but I'm telling the truth now. He was very evident that he was telling the truth. Now, there's no doubt about that. And with regard to Kennebrew and Colton, I note that those cases are on the other side of the standard of review. The standard of review for whether or not you actually not the lesson, whether it's a lesson included, but whether you get the instructions on it is there must be some evidence and it's an abuse of discretion standard. Now, in those other cases, we had the situation where the trial judges and with the appellate court here after being remanded from the Supreme Court had said, yeah, there was sufficient evidence here. The judge determined, no, there was not sufficient evidence. And given that the only thing at all is this statement about attempting private parts, we would say that it was not an abuse of discretion for the trial judge not to allow instructions on those. We haven't talked about the first tier of the assessment or of the inquiry that we would make, but the state doesn't really have an argument concern. I mean, you don't make a strong argument concerning that first tier of looking at the charging instrument. My argument was that with regard to the penile anal penetration, that it wasn't a lesson included. Kennebrew would seem to preclude that. Now, although I will note that arguably all the statements in Kennebrew which would seem to preclude that are dicta because in Kennebrew, the Supreme Court two or three times says, well, neither the state nor the defendant argue that this is not a lesson. And yet they go on to address it. You know, I don't know. And my position is still at least with the circumstance where you're talking about penetration. Now, maybe I'm sorry, insertion. If you're talking about penetration being just contact, then maybe it's a lesson because there could be a question of whether the penis got far enough in to touch. But when you're talking about you have evidence and statements about nothing except actual insertion. I would argue that it's not a lesson. And I think Kennebrew is wrong if they decided the other way. But no, given Kennebrew, my argument now must be mostly on the actual evidentiary requirement. With regard to the second issue, I find it very interesting here that counsel on appeal is saying, well, counsel below was wrong for arguing with regard to getting in this one minute and 14 seconds that the people sought to redact out. He's wrong for getting this in to argue that the child embellished. When her entire or much of her argument with regard to the first issue is that the child embellished. And it seems to me somewhat hypocritical to say, well, embellishment is important with regard to the first. And I'd say, well, it wasn't important for the trial counsel to try and use embellishment. And that regard, I think it's very important to note some things that were brought up. And I want to accent them. First of all, she says, well, this they looked at the the sex offender website after his original statements. Yes, that's true. And I never argued anything differently. Neither did counsel below argue anything differently. If you look at the record from 1252 to 1258 and at 1585, the defense attorney below consistently says this was before the one 1609 statements, one 1510 statements getting in to Officer Pleasant. He never says it was before everything before the victim reported it to his parents. He says it was before these one 1510 January 16th statements. That's why he was using them specifically. He also notes when he cross examined the father who was called in the puddle. And this is at 1711 to 1712. He was very careful to get to get from the father the fact that the father said, well, we never saw any graphics on this website. We never saw any specifics with regard to charges against him. We saw that he was a sex offender. Well, what does this do? It impeaches the child, which was a whole intent of doing this. How does it impeach the child? It impeaches the child because the child says, I saw that he raped these three children. I saw that he raped these two adults. The father says we saw no specifics about priors. We saw nothing. We saw that he was on there as a prior offender, but we saw no specifics, which the child said he had seen. And of course, there was just the fact that the child was unsure about the ages of the adults. And then it was unsure whether there was one or two or three children. These things. Yeah. And it's not the best impeachment. But given the fact that they already had the prior admission of the 1995 very similar incident, soaping up the family, putting in a child's anus and concern or looking at the penises, claiming that, well, they were dirty. Plus the subsequent event with this child, which we would argue clearly was going to come in because it was the same child. It was only a few days afterwards. It was very similar conduct. Him with another child in the house, but somewhere else at the time, making sexual advances to the child. I don't think there's any doubt that that comes in. So you have those two. And this other one, while they are arguably more damaging, more intense offenses, there's some question about whether or not they were really listed on the website. Not only were they, does the father testify, we didn't see this, but there's no evidence from the people about this at all. So certainly the jury could question, well, you know, maybe this kid is embellishing, which is exactly what the defense attorney below and defense attorney here wants to push. Now, what exactly did the defense attorney say, as you recall it in closing argument, to highlight this strategy? And that's what's going to be your position, the strategy that he used. And I'm sorry, I don't have sites to do this, but I agree, I think, with Ms. Hamill that what he said was, well, look at what this child said. He didn't say anything about rape until after he saw this video. He didn't say anything about this type of action until after this video, well, penetration after this video. So I think he was using it in the way he intended to use it. He was trying to tell the jury that the child is at the very least embellishing and at most just making things up. The child never said he was raped, though. He said, at least my recollection is, he actually said what happened. He didn't use a phrase to describe what happened. I think that at one point he said, we saw that he raped these other kids just like he did me. Okay. But the first, and I think counsel mentioned this, the first disclosures to the parents that he tried to do private parts with them. That was before. So it's clear that he has, something has happened. And then after the hospital visit, that's when he and his parents look at the website. Correct, Your Honor. And then the argument is that the defense strategy is, let's, we're already sunk. There's other crimes evidence coming in. We have this child's testimony, the 115 tenth statement. How do I impeach it? And that's what he sought to use. I believe so, Your Honor. And he was very clear again in those 1252 to 1258. He was very, very clear. The defense attorney was that he wouldn't have used this had the other things not come in. But that he thought it was impeaching. He thought it was his best chance. And he thought it was warranted. It was clearly a trial tactic. How does that distinguish that from what happened in Phillips where it was ineffective to cross-examine and bring out other crimes on cross? Well, I think it depends upon the status of the other evidence. And I think given the other evidence here, it was, and the evidence that he brought out, both from the father and from the time of the statements and the child's statements themselves about all this, all this stuff that the father says we didn't see, makes it reasonable. I think it's all evidentiary based. In closing argument, did the state argue at all that this, the other crimes that were on the video? In other words... No, Your Honor. We did not say that, you know, in light of these other crimes. As I recall, they argued the ones at the 95 and I think they mentioned the later date, the rubbing through the pants. But I do not recall any argument regarding these that came out in that one minute and 14 seconds that they had redacted. The final thing I have to say is this business, and there's no doubt about it, when the defense attorney says, well, I don't have a right to object to that. No one went into that and asked what he meant. I can only suppose that perhaps what he's saying is, remember at that time, the 1995 event had already been allowed in. And if the 1995 event came in regarding different children in a bathtub, certainly this one with the same child within three or four days on a bed was going to come in. So maybe what he meant was, I don't have a right, but there's no way I'm going to win that. What a waste of time. Yeah, there's no way I'm going to win that. Well, but he knew that the 1995 information was going to come in because there was some motion practice that related to that beforehand. He also knew that the state had dismissed the other charges that might have actually been proven by this fondling over the clothes. And so, you know, did he have an expectation that that was going to be okay? I mean, you know, did. Well, I think, you know, at this point, when the people went into the subsequent incident with this same victim, the 1995, as you said, had already been litigated pretrial and it was coming in. So we had no reason to expect that this wouldn't come in. Remember that although he didn't specifically argue it, there was some use to this in his. Well, he didn't argue this, that he tried to argue the lesser included offense, both with regard to the first incident and with regard to the second incidents that were dismissed. There were no cross. No, I think the trial judge correctly said, well, no, you're trying to you're trying to use something that was no cross and go in. But he had to use whatever he could in this case. And he tried. I think he tried to use that later. So that could have been part of the strategy that not only can I reasonably expect this to stay out, but maybe I can use it later. And he did. He argued that to try and get the lesser included, but it probably failed. If there are no further questions, Your Honor, we would ask this court to affirm the convictions and sentences. Thank you. Ms. Hammond. Just a few things. As far as the court having exercised its discretion when it denied, refused the lesser included jury instructions, in this case, the court's concern was that the defendant was originally charged with aggravated criminal sexual abuse. Based on that second incident, that other crimes incident, and the state had dismissed those charges prior to the beginning of the trial. And so the court seemed to think that the defense was trying to make an end run around the state's decision to dismiss those charges. And really didn't talk about anything else when he told them we're not going to give these instructions and didn't address the charging instruments approach. So that's the basis of our argument that it was an abuse of discretion. It really wasn't an exercise of discretion that addressed the proper issues, the issues that the law would require the court to address. And regarding the cross-examination of the father, the rebuttal witness, when he's recalled to verify that actually this thing was, this video was viewed after the complaints were made. The, it's a very short cross-examination. It's transcribed in three pages. He, defense counsel got him to, got the father to say that he, that what he was going after was, wasn't there some information on the site besides just the listed offenses? You know, were there graphics? Were there details? But there, there's no, I don't think you can possibly construe what the father response to those questions as meaning that it simply listed him as a sex offender without a single solitary crime identified. That, that would be contrary to, to our experience of any, any sex offender website. Most of these registry, you know, sexoffender.com sort of sites, I did try to find this one and apparently it's disappeared. But they seem to hook up with, I did find other ones that hooked up with the Illinois registry. And you put that in your brief? Pardon? That's in your brief, isn't it? Did you summarize what's on the? I, I summarized what's on the Illinois registry and I, and I speculated that maybe this site hooked up to that site. And that, and the Illinois registry does, does have a seven-year-old. But again, defense counsel. Does it have a what? It does, it does identify an offense against one seven-year-old. But again, a defense counsel, if he was going to bring this in, in order to show that the child had embellished his story in this respect as well on the tape, he would need to then show what the defendant actually was convicted of in the past. And, you know, that would be, and the things that are listed on this Illinois registry, actually he wasn't convicted of apparently. I mean, at least if he was, then it's strange that the state didn't bring those things in for the purposes of sentencing and for the purposes of impeachment. So it really was a can of worms. And it, it, it's just impossible that this would be a sound strategy for a defense attorney to adopt in a child sex case. To let jurors know from the defense side of the trial that there's a lot more convictions as well as the ones that you've already heard about. When we look at defense counsel's conduct, you would agree, we look at the entire record. Yes. Not just isolated or one strategic decision. Would you agree that defense counsel exercised sound discretion in calling family members to show that no one heard anything, no one saw anything, relatives didn't see anything. So this was just part of the overall strategy. The other crimes evidence is already coming in with respect to the 95 case and now he's looking for a way to somehow impeach the child's testimony. Your argument is they had enough, he had enough, he didn't need to do this, correct? Well, my argument is that this, this was one walloping mistake. And that we can see from his discussion of it, from his argument for it, that he didn't even really know what the contents of this video was. He was mistaken as to what they were. And, and still exposed the jury to this very inflammatory information. So, yeah, we think it's enough to offset a lot of other things he did. Thank you, Your Honor. We do ask for a new trial. Thank you. Thank you. All right, counsel, thank you for this argument finally. We can try to dispose of the case and we will take the matter under advisement. A decision will be made in due course. And even though this was it, we're done. We're adjourned for the day. Thank you. Thank you.